# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RONALD TAYLOR, *et al.*, | Case No. 2:11-cv-01360-APG-CWH |
| Plaintiffs, | **ORDER GRANTING DEFENDANT ARIA'S MOTION FOR SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES** |
| v. | |
| ARIA RESORT & CASINO, LLC, *et al.*, | |
| Defendants. | **[Dkt. #141]** |

Plaintiffs allege that while staying at Aria Resort and Casino in Las Vegas in 2011, they acquired *Legionellosis*, a form of pneumonia sometimes transmitted through the water management systems of buildings. They seek, among other things, punitive damages, alleging that Aria demonstrated "wanton disregard" of and "deliberate indifference" to the hotel guests.[1] Aria moves for summary judgment on those punitive damages. Finding that no genuine issue of material fact exists, and because Aria is entitled to judgment as a matter of law, I grant Aria's Motion.

## BACKGROUND

**Factual History**

In May of 2010, Aria obtained a water management plan from a third-party consultant.[2] The plan was designed to prevent the growth of *Legionella*, a bacteria that can lead to a form of pneumonia called "Legionnaire's Disease."[3] Four months later, the consultant revised the plan to

---

[1] Dkt. #55 at ¶62.

[2] Dkt. #141-1 at 8-9.

[3] *Id.*

include periodic testing for *Legionella*.[4]  Testing began before any of the plaintiffs arrived at the hotel.[5]

In June of 2010, the Southern Nevada Health District ("SNHD") performed an environmental assessment of Aria, after which lead investigator Mark Bergtholdt sent a report to the Center for Disease Control ("CDC") summarizing his findings.  Responding to Bergtholdt's report, Laurel Garrison of the CDC wrote the following in an email to him:

> Thank you for sharing the results of your investigation. It looks like you've done a very thorough assessment and have not found anything out of order or any red flags. I will file this information in case we receive any additional reports associated with a stay at this hotel.[6]

The exposure period for plaintiffs occurred almost a year later, between April and July of 2011.[7] Before that neither of the two Aria facilities managers, William Ham and Paul Carballosa, were aware of any hotel guests contracting an illness from *Legionella*.[8]

In June of 2011, a month that falls within the period when plaintiffs stayed at Aria, the SNHD found *Legionella* in the hotel's water system. Aria then began a remediation program to improve its control of the bacteria.  This program included (1) installing a state of the art chlorination system that required Aria to obtain a permit as a public water purveyor, (2) replacing fixtures, and (3) developing a more comprehensive water management plan.  Aria also sent out notices to 18,000 guests who stayed at the hotel during the period when *Legionella* was discovered.[9]

/ / / /

/ / / /

---

[4] *Id.*

[5] The last test was conducted February 23, 2011. (Dkt. #141-1 Exhibit A.) "The exposure period for these plaintiffs occurred between April and July of 2011." (Dkt. #146 at 7.)

[6] Dkt. #141-6 at 22 (emphasis added).

[7] Dkt. # 146 at 7.

[8] Dkt. # 141-3 at 7; Dkt. # 141-1 at 14; Dkt. # 141-2 at 37.

[9] Dkt. #141 at ¶31; Dkt. #146 at ¶31.

**Procedural History**

On August 23, 2011, plaintiffs filed their initial complaint, alleging that they acquired Legionnaires' Disease at Aria and, as a result, "became seriously ill, incurred significant medical bills, endured pain and suffering, and loss [sic] of life's pleasures."[10]  Various spouses of plaintiffs also alleged loss of consortium.[11]  Plaintiffs assert theories of negligence, breach of contract, and loss of consortium.  They seek both compensatory damages and punitive damages.

In response to plaintiffs' initial complaint, Aria filed a Motion to Dismiss Plaintiffs' Punitive Damage Claim,[12] which this Court granted without prejudice.[13]  According to Judge Dawson, who was presiding over the case at the time, "the complaint [did] not demonstrate Aria acted with a conscious disregard of the rights and safety of the Plaintiffs."[14]  Plaintiffs then filed a Motion for Leave to Amend.[15]  I granted the motion;[16] Plaintiffs amended their complaint;[17] discovery closed; and Aria again moves for summary judgment on the punitive damages claim.[18]

## DISCUSSION

**Legal Standard: Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is

---

[10] Dkt. #1 at ¶¶39-44.

[11] *Id.* at ¶¶45-48.

[12] Dkt. #9.

[13] Dkt. #52.

[14] Dkt. #52 at 5.

[15] Dkt. #89.

[16] Dkt. #117.

[17] Dkt. #118.

[18] Dkt. #141.

entitled to judgment as a matter of law."[19]  Material facts are those that may affect the outcome of the case.[20]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[21]  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[22]  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[23]

    In determining summary judgment, courts apply a burden-shifting analysis.  When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case, or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[24]  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[25]

    If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[26]  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

---

[19] Fed. R. Civ. P. 56(a).

[20] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] *See id.*

[22] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[24] *See Celotex*, 477 U.S. at 323–24.

[25] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

[26] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

parties' differing versions of the truth at trial."[27]  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.[28]  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[29]

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.[30]  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[31]  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[32]

**Punitive Damages**

"Punitive damages are designed to punish and deter a defendant's culpable conduct and act as a means for the community to express outrage and distaste for such conduct."[33]  To recover them, Plaintiffs would have to show by "clear and convincing evidence that [Aria] has been guilty of oppression, fraud, or malice."[34]  Showing that Aria's conduct was reckless or grossly negligent

---

[27] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

[28] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[29] *See Celotex*, 477 U.S. at 324.

[30] *See Anderson*, 477 U.S. at 249.

[31] *Id.* at 255.

[32] *See id* at 249–50.

[33] *Countrywide Homes Loans, Inc. v. Thitchener*, 124 Nev. 725 (2008) (citing *Bongiovi v. Sullivan*, 122 Nev. 556 (2006)).

[34] Nev. Rev. Stat. § 42.005(1).

1    is not enough;[35] Plaintiffs must demonstrate that Aria acted with "a conscious disregard" of their

2    rights or safety.[36]

3         Plaintiffs have failed to meet this burden, particularly given that the standard is "clear and

4    convincing evidence."  They have not shown, as the plaintiffs in *Countrywide Homes, Inc. v.*

5    *Thitchener* did, that the defendants willfully ignored, on several occasions, clear signs of potential

6    harm.  In that case, Countrywide proceeded to foreclose on the wrong condominium unit—and

7    threw out all of the furniture, electronics, and other personal property found inside—despite there

8    being (1) multiple documents on file showing that this was the wrong condominium unit; (2)

9    multiple people who reviewed those documents; and (3) multiple reasons to suspect, when steps

10   started to be taken to "trash out" the place, that the unit had not in fact been abandoned.[37]  Rather

11   than take the time to investigate these "red flags" and adjust its foreclosure plan, Countrywide

12   repeatedly ignored them, leading the Nevada Supreme Court to conclude that Countrywide's

13   actions—or rather non-actions—"indicated a willful and deliberate failure"[38] to avoid the harm

14   the plaintiffs in that case suffered

15        In the present case, by contrast, the evidence shows that Aria took many measures before

16   and during the period when *Legionella* was discovered to address the harm the bacteria might

17   cause.  Aria hired a third party to help it design and eventually revise a Legionella Water

18   Management Plan.  It routinely tested for the bacteria, implementing a "heat and flush"

19

20   _____

21   [35] *Thitchener*, 124 Nev. at 743 ("We conclude that [the punitive damages statute] denotes conduct that, at a minimum, must exceed mere recklessness or gross negligence.")

22   [36] *Id.* ("Under [the punitive damages statute],'malice, express or implied' means conduct which is intended
23   to injure a person or despicable conduct which is engaged in with a *conscious disregard* of the rights or safety of others. Similarly, 'oppression' means despicable conduct that subjects a person to cruel and unjust hardship with *conscious disregard* of the rights of the person. Both definitions utilize conscious
24   disregard of a person's rights as common mental element, which in turn is defined as the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those
25   consequences.") (emphasis added in *Thitchener*, not in the actual statute) (internal quotations omitted).

26   [37] *Id.* at 246-247. (Deployed by the Air National Guard to Tucson, Arizona, Gerald Thitchener had taken his wife and their children there to rent a place until his deployment ended.)

27
     [38] *Id.* at 744.
28

6

remediation plan anytime the reported levels exceeded a certain threshold.  And then, when it learned from the SNHD that guests had become ill, Aria began a comprehensive investigation and remediation plan that was approved by the SNHD and ultimately succeeded in killing the *Legionella*.

Aria notes that none of these measures was required by statute.  Moreover, courts have focused on the lack of industry standards and government regulations surrounding *Legionella* prevention when dismissing claims at the summary judgment phase.[39]  Because "*Legionella* infection is a rare and relatively unforeseeable occurrence,"[40] there is no clear set of prevention guidelines Aria could have willfully ignored.  And plaintiffs certainly do not point to one.  It is also worth noting that *Legionella* has found to be "present in all water sources"; accordingly, "the presence of *Legionella* in the water supply of [a particular building] could have occurred absent Defendant's negligence."[41]

This does not mean a jury could not, eventually, find that Aria acted negligently.  Plaintiffs could very well prove that at trial.  But plaintiffs have not provided evidence that raises a genuine issue of material fact as to whether Aria "consciously disregarded" their rights or safety during their stay at the hotel.  Therefore, I grant Aria's Motion for Summary Judgment as to Punitive Damages.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Aria's Motion for Summary Judgment as to Punitive Damages [**#141**] is **GRANTED**.

DATED THIS 23rd day of February, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[39] *Vellucci v. Allstate Ins*. Co. 431 N.J. Super 39, 55 (2013) ("There  is no statutory or regulatory scheme imposing a duty on owners and managers of commercial office buildings to take affirmation action to detect the presence of *Legionella*."); *Range v. Ford Motor Co*. 412 F. Supp. 2d 732, 738 (2005) ("There is no evidence Defendant failed to comply with any government regulations regarding the control of Legionella bacteria, as  none existed; nor was it required or recommended that Defendant test for *Legionella* bacteria prior to an incident of exposure.").

[40] *Vellucci,* 431 N.J. Super. 39 at 43 (quoting the trial court's decision).

[41] *Flaherty v. Legum & Norman Realty, Inc*. 2007 WL 4694346 at *18.

7